UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

William B. Ball,

    Plaintiff,

v.                        Case No.: 5:25-cv-00123-TPB-PRL

Donovan G. Davis, Jr.,
Christiane Davis,
Frank L. Amodeo,

    Defendants.

_____/

### RESPONSE TO DEFENDANT CHRISTIANE DAVIS'S MOTION TO DISMISS

Plaintiff WILLIAM B. BALL ("Mr. Ball") responds to Defendant CHRISTIANE DAVIS'S ("Defendant") Motion to Dismiss (D.E. 39). The Motion raises two arguments. First, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, this Court lacks diversity jurisdiction. Defendant then argues, pursuant to Rule 12(b)(6), the Complaint fails to sufficiently plead civil RICO. As explained in detail below, Mr. Ball has put forth sufficient allegations to support both diversity jurisdiction and civil RICO. Defendant's Motion fails on both grounds.

### MEMORANDUM OF LAW

#### I.  FACTS AND PROCEDURAL HISTORY

On February 20, 2025, Mr. Ball filed a Complaint against Defendant Christiane and two co-defendants (collectively, "Defendants"). (D.E. 1). The Complaint alleges, for the purposes of diversity jurisdiction, that Mr. Ball is a citizen of Mississippi. (D.E. 1, Compl. at ¶ 5), and all three Defendants are citizens of Florida. (D.E. 1, Compl. at ¶¶ 6, 7, 8).

Further, as alleged in Mr. Ball's attached affidavit, Mr. Ball was born and raised in Mississippi. (Exhibit 1, Affidavit of William B. Ball in support of Diversity Jurisdiction at ¶ 2). Mississippi has always been Mr. Ball's permanent home,

and is the place Mr. Ball intends to return whenever he has been away from Mississippi. (Ex. 1, Ball Aff. at ¶ 3). Whenever Mr. Ball is asked for his address for official purposes, he gives a Mississippi address. (Id. at ¶ 4). Additionally, Mr. Ball's passport indicates a Mississippi address; his drivers license is issued by Mississippi; he is registered to vote in Mississippi, he pays Mississippi state income taxes; he banks in Mississippi. (Id. at ¶¶ 5-10). And when Mr. Ball is released from prison, he fully intends on returning to Mississippi, legally and in compliance with all terms if his conviction and supervised release. (Id. at ¶ 11).

The Complaint alleges several causes of action, including RICO, that all center around a scheme to defraud, (D.E. 1, Compl. at ¶¶ 74-96), resulting in hundreds of thousands of dollars of damages to Mr. Ball. (Id. at ¶¶ 488, 509, 529, 557, 579, 599, 618, 633, 654, 657, 693, 695, 711, 727). The Defendants misrepresented their ability to provide beneficial legal services in order to induce Mr. Ball into giving Defendants more and more money. (Id. at ¶¶ 102, 115, 125, 131, 139, 146, 196, 218, 245, 255, 283, 284, 297, 357, 364). To further this scheme to defraud, Defendants used the federal courts. (Id. at ¶¶ 506-509, 512, 517, 532, 538, 542-43, 570, 582, 587, 603-613, 620-624, 635-640, 671-680).

Mr. Ball alleges Defendants are liable to Plaintiff for violations of civil RICO, i.e., 18 U.S.C. §§ 1961-64. (Id. at ¶¶ 634-693). The Complaint alleges Defendants engaged in racketeering activity,——specifically mail and wire fraud——to further their scheme to defraud. (Id. at ¶¶ 97-107, 642-643, 659-661). According to the allegations in the Complaint, Defendants formed a distinct entity called "The Law Office" as an enterprise to engage in their scheme to defraud. (Id. at ¶ 62 ("Amodeo's collaboration with Donovan and Christiane coalesced into creating a 'Law Office' inside an activity room in the B-3 housing unit of FCC Coleman Low."); see also id. at ¶¶ 635-636, 77-82, 113, 187, 635-636). The Complaint goes on to allege Defendants' racketeering activity was not isolated or sporadic, but rather, a pattern of ongoing, continuing criminal fraud. (Id. at ¶ 636 ("Defendants have continuously operated and

managed this enterprise up to the present day.")). The Complaint explains how the Defendants, through their common enterprise called "The Law Office," found one way after another to defraud Mr. Ball using the common theme of legal services over the span of four and a half years. (D.E. 1, Compl. at ¶ 635).

First, it was a sure-win appeal that cost Mr. Ball $26,000.00. (D.E. 1, Compl. at ¶¶ 91-93, 196). Then there was $68,800.00 in monthly fees for paralegal work. (Id. at ¶ 196). Defendants convinced Mr. Ball that his legal situation would be aided by paying $18,000.00 to name Defendant Christiane as his Power of Attorney. (Id. at ¶ 218). Next, it was $54,000.00 for a Motion for Return of Property. (Id. at ¶ 245). Followed by $13,000.00 for a Writ of Certiorari. (Id. at ¶ 255). Then came another $48,500.00 in monthly paralegal fees. (Id. at ¶ 283). Defendants also convinced Mr. Ball to pay $15,000.00 for Adams State University (Id. at ¶ 288) and $18,000.00 for a private investigator (Id. at ¶ 297), neither of which Defendants ever obtained for Mr. Ball. (Id. at ¶¶ 285, 292). In order to continue their fraud, Defendants told Mr. Ball that he should file a Motion to Vacate, for which Defendants charged $95,500.00. (Id. at ¶ 351). All of these were one scheme to defraud tied together by the common thread of legal services, causing Mr. Ball damages of $358,874.45 over four and a half years. (Id. at ¶¶ 633, 669, 693).

Defendant Davis then filed her Motion to Dismiss, arguing the Court lacks subject matter jurisdiction. (D.E. 39, Motion at p.3). Defendant Davis argues—without providing any evidentiary support—that Plaintiff is a resident of Florida and, thus, the Court lacks diversity jurisdiction. (D.E. 39, Motion at p.3). The Motion then argues, pursuant to Rule 12(b)(6), Mr. Ball failed to sufficiently plead a civil RICO action. (D.E. 39, Motion at pp. 4-6).

Both arguments fail.

II. ANALYSIS

   A. The Court has Diversity Jurisdiction.

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the Plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)(internal quotations omitted)).

Defendant's Motion fails regardless of whether taken as a facial or factual attack on diversity jurisdiction.

   1. Defendant's Facial Challenge on Diversity Jurisdiction Fails.

Defendant does not attach any affidavits or testimony; nor does she include any evidence outside the Complaint (D.E. 39). Defendant references Mr. Ball's criminal case, but does not attach any filings, or ask the Court to take judicial notice. (D.E. 39, Motion at p.3). Defendant's Motion should be treated as a facial attack on diversity jurisdiction. See Allstate Ins. Co. v. Auto Glass Am., 2020 U.S. Dist. LEXIS 193014 *6 (M.D. Fla. 2020)("The Court will consider Defendants' arguments that do not rely on any evidence outside the Complaint under the framework for a Rule 12(b)(1) facial challenge to jurisdiction, accepting the allegations in the Complaint as true.") (citing Morrison v. Amway Corp., 323 F.3d 920, 925 n.3 (11th Cir. 2003)).

To survive a facial challenge to diversity jurisdiction, Mr. Ball need only show he has sufficiently pleaded subject matter jurisdiction and "is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Lawrence, 919 F.2d at 1529. Mr. Ball has met this burden in pleading diversity jurisdiction. Namely, Mr. Ball has alleged, and Defendant does not dispute (D.E. 39, Motion at p.3) that all three Defendants are citizens of Florida (D.E. 1, Compl. at ¶¶ 6, 7, 8). The Complaint also states that

Mr. Ball is a citizen of Mississippi (Id. at ¶ 5). Finally, Mr. Ball claims damages in excess of $75,000.00. (Id. at ¶ 2, 488, 509, 529, 557, 599, 618, 633, 693, 798).

Defendant's Motion to Dismiss for lack of diversity jurisdiction should be denied. See Lett v. Alfa Ins. Co., 2022 U.S. Dist. LEXIS 145515 *7 (M.D. Ala. Aug. 15, 2022)(denying defendant's 12(b)(1) motion to dismiss because defendant failed to present "evidence outside the complaint, such as testimony or affidavits, on which a federal challenge to subject matter jurisdiction may be grounded.").

### 2. Any Factual Challenge to Diversity Jurisdiction Fails.

To the extent the Court views Defendant's Motion as a factual challenge, or conducts its own factual review of diversity jurisdiction, it also fails. The sole point of contention regarding diversity jurisdiction is Mr. Ball's citizenship. (D.E. 39, Motion at p.3 (challenging diversity jurisdiction solely on basis of lack of complete diversity)). Mr. Ball is a citizen[1] of Mississippi and, thus, complete diversity exists. See 28 U.S.C. § 1332(a)(1).

While it is true Mr. Ball is currently incarcerated in Florida, this does not make him a citizen of Florida for the purposes of diversity jurisdiction. See Mitchell v. Brown & Williamson Tobacco Corp., 294 F.2d 1309, 1314 (11th Cir. 2002)(ruling the parties diverse by looking into plaintiff's domicile, i.e., Alabama, prior to his incarceration in Wisconsin)). "Plaintiff's citizenship for diversity purposes is determined based on where he was domiciled before he was incarcerated in Florida." Sanders v. Sanders, 2020 U.S. Dist. LEXIS 28154 *3 n.1 (S.D. Fla. Feb. 13, 2020) (citing Mitcell, 294 F.3d at 1314); see also Palakiff v. Henderson, 370 F. Supp. 690, 693 (N.D. Ga. 1973), aff'd. 488 F.2d 977 (5th Cir. 1974)("A prisoner does not acquire a new domicile in the place of his imprisonment, but returns [to] the domicile

---

1/ Defendant conflates residency with citizenship. (See D.E. 39, Motion at p.3). The test for diversity jurisdiction is the **citizenship** of the parties, not their residency. 28 U.S.C. § 1332(a)(1); see also Travaglio v. Am. Express Co., 735 F.3d 1266, 1269 (11th Cir. 2013)("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person.").

he had prior to incarceration."). The relevant question, therefore, is: which state was Mr. Ball a citizen of prior to his incarceration?

Defendant argues that Mr. Ball's citizenship should be Florida, because he was living in Dubai prior to being arrested in Florida. (D.E. 39, Motion at p.3). However, Mr. Ball had only been temporarily residing in Dubai for work for seven (7) months. (Ex. 1, Ball Aff. at ¶ 2).[2] And, Mr. Ball did not purchase any property in Dubai or put down any roots whatsoever in Dubai. (Id.).

Plaintiff's temporary residence in Dubai is not sufficient to change his citizenship. See Landmark Infrastructure Holding Co., LLC v. N. Ga. Speculators, LLC, 2022 U.S. App. LEXIS 9535 *9 (11th Cir. 2022)("Domicile is not synonymous with residence because a person may temporarily reside in one location yet retain domicile in a previous residence.")(citing Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1342-43 n.12 (11th Cir. 2011); McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002)).

"A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom...." McCormick, 293 F.3d at 1275-58 (quoting Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974), cert. denied 419 U.S. 842 (1974)(quotations omitted)). In McCormick, the Eleventh Circuit reviewed the district court's finding of diversity jurisdiction. McCormick, 293 F.3d at 1257. In dispute was plaintiff's citizenship, which the district court found to be Florida——thus, supporting diversity jurisdiction——but plaintiff argued was actually Alabama. Id. In determining plaintiff's domicile, the court noted plaintiff owned property in Alabama and his personal physical was located in Birmingham, Alabama. Id. at 1258. However, the Eleventh Cir-

---

2/ The Court may consider "evidence outside the complaint" when considering a 12(b)(1) factual challenge to diversity jurisdiction. Feria v. U.S. Solar Squared, LLC, 2021 U.S. Dist. LEXIS 271453 *6-7 (M.D. Fla. Sep. 30, 2021)(citing Eaton v. Dorchester Dev. Inc., 692 F.2d 727, 732 (11th Cir. 1982)).

cuit supported the district court's analysis, which "looked at several specific factors." Id. Namely, plaintiff owned property in Florida, had a Florida driver's license, was registered to vote in Florida, and paid only Florida income taxes. Id.

Mr. Ball is in a nearly identical situation. Mr. Ball was born and raised in Mississippi. (Ex. 1, Ball Aff. ¶ 3). Mississippi has always been Mr. Ball's permanent home, and the place he intends to return to whenever he has been away from Mississippi. (Id. at ¶ 4). When he was arrested, the address Mr. Ball provided was his Mississippi address. (Id. at ¶ 5). Further, his passport (Id. at ¶ 6), drivers license (Id. at  ¶ 7), and voter registration (Id. at ¶ 8) have always indicated a Mississippi address. Mr. Ball pays Mississippi state income taxes. (Id. at  ¶ 9), and he has banked at a Mississippi financial institution since he was five years old. (Id. at ¶ 10). And when he is released from prison, he fully intends on legally returning to Mississippi. (Id. at ¶ 11).

The factors clearly show Mr. Ball established his domicile in Mississippi. See Smith v. Marcos & Millichap, Inc., 991 F.3d 1145, 1149 (11th Cir. 2021)("courts look to various factors in determining a person's intent to remain in a state, including ... the location of bank accounts, payment of taxes, voter registration, drivers license ... and sworn statement of intent."); see also Dos Santos v. Belmere Ltd. P'ship, 516 Fed. Appx. 401, 403-04 (11th Cir. 2013)(affirming appellants were domiciled in Louisiana even though they had relocated to Texas where appellants expressed their intention to return to Louisiana). There is no evidence Mr. Ball ever established a new domicile outside Mississippi and, thus, he is a citizen of Mississippi. See Fidogenix, LLC v. Tequesta Holdings, LLC, 2022 U.S. Dist. LEXIS 226020 *4 (S.D. Fla. Dec. 15, 2022)("Once a person establishes a domicile, it continues until the person establishes a new domicile.")(citing Mas, 489 F.2d at 1399). Defendant's Motion to Dismiss for lack of diversity should be denied.

B.  Mr. Ball Sufficiently Pleads a Federal Civil RICO Action.

Defendant also argues, pursuant to Rule 12(b)(6), the Complaints fails to suffi-
ciently plead a federal civil RICO claim. (D.E. 39, Motion at pp. 4-7). "In ruling
on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in
the light most favorable to the plaintiff and accept all well-pled factual allega-
tions as true." Wintrust Speciality Fin. v. Barrs Transp., Inc., 2022 U.S. Dist.
LEXIS 192622 *3 (M.D. Fla. 2022)(citing Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252,
1260 (11tn Cir. 2009)).

"Civil RICO claims, which are essentially a certain breed of fraud claims, must
be pled with an increased level of specificity." Ambrosia Coal & Constr. Co. v. Pages
Morales, 482 F.3d 1309, 1316 (11th Cir. 2007). "Courts have therefore applied Rule
9(b)'s heightened pleading standard to RICO claims." Life Brite Labs, LLC v. Blue
Cross & Blue Shield of Fla., Inc., 2024 U.S. Dist. LEXIS 107239 *31 (N.D. Ga. June
17, 2024).

"Specificity under Rule 9(b) does not, however, eliminate the concept of notice
pleading.... The particularlty requirement may be relaxed for allegations of 'prolon-
ged multi-act schemes'...[Thus,] permit[ting] a plaintiff to plead the overall nature
of the fraud and then to allege with particularity one or more illustrative instances
of the fraud." Burgess v. Religious Tech. Ctr., Inc., 600 Fed. Appx. 657, 662-63
(11th Cir. 2015)(citations omitted).

"Plaintiff's 'suing under the civil provisions of RICO must plausibly allege
six elements: that the defendants (1) operated or managed (2) an enterprise (3)
through a pattern (4) of racketeering activity that included at least two predicate
acts of racketeering, which (5) caused (6) injury to the business or property of the
plaintiff[s].'" Oke v. Prontowash, LLC, 2024 U.S. Dist. LEXIS 214712 *6 (M.D. Fla.
Nov. 26, 2024)(quoting Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir.
2020 (citations omitted)).

Defendant argues the civil RICO claims fail because they are premised on allegations of the unauthorized practice of law. (D.E. 39, Motion at p.4). Defendant completely misconstrues the civil RICO counts, which are based on mail and wire fraud and fraudulent use of federal courts. (D.E. 1, Compl. at ¶ 634-693). Defendant then argues the Complaint fails to sufficiently plead the elements of RICO. (D.E. 39, Motion at pp. 4-7). However, Defendant's Motion fails to cite, quote, or otherwise point to the parts of the Complaint that fail to meet pleading standards. (Id.). This is because Defendant cannot do so with this detailed, perhaps overly detailed, Complaint. (See D.E. 1, Compl.). As explained fully below, the Complaint sufficiently pleads each and every element of civil RICO. Defendant's motion must be denied.

    1.  <u>The Complaint Sufficiently Alleges a Pattern of Racketeering Activity.</u>

"Racketeering activity is defined as any act indictable under any of the statutory provisions listed in 18 U.S.C. Section 1961(1), which includes mail and wire fraud in violation of 18 U.S.C. Sections 1341 and 1343." <u>Cardenas v. Toyota Motor Corp.</u>, 418 F. Supp. 3d 1090, 1099 (S.D. Fla. Sep. 30, 2019)(ruling RICO claim was sufficiently pleaded). In order to plead a "pattern of racketeering activity," the Complaint must allege "at least two such acts within a ten-year period." <u>Id.</u> (citing 18 U.S.C. § 1961(5)).

Count X bases the RICO claim on allegations of mail and wire fraud. (D.E. 1, Compl. at ¶ 643 ("Defendant's enterprise to defraud Ball of his money continued through Christiane's use of the U.S. Mail to send invoices demanding payments from Ball for fraudulent services, and Christiane's acceptance of payments from Ball on behalf of all Defendants.")). Defendant attempts to cloud this fact by arguing the RICO claims are based on the unauthorized practice of law and any such claims are the sole province of the Florida Supreme Court; both arguments are misplaced. (D.E. 39 Mtn. at 4).

First, the Complaint clearly alleges the Defendant's scam which was nothing more than a scheme to defraud Mr. Ball out of as much money as possible. (D.E. 1, Compl. at

635 (Defendants "began operating and managing an enterprise with the purpose of defrauding inmates at the Federal Bureau of Prisons out of money under the fraudulent guise of providing legitimate legal services, i.e., "The Law Office.")).

Second, Defendant's interpretation of Goldberg v. Merrill Lynch Credit Corp., 35 So. 3d 905, 907 (Fla. 2010), that the Florida Supreme Court must first make a case or Defendant-specific finding that particular conduct in the unauthorized practice of law, is in error. (D.E. 39, Motion at p.4). Goldberg does not require any case or Defendant-specific finding, but rather, that the conduct at issue be of the type or category that the Florida Supreme Court has already ruled to qualify as the practice of law. Goldberg, 35 So. 3d at 907. The Court does not lack jurisdiction over Mr. Ball's civil RICO claims.

Defendant alternatively argues the Complaint fails to sufficiently plead racketeering activity. (D.E. 39, Motion at p.5). Count X, as detailed above, pleads civil RICO based on mail and wire fraud. (D.E. 1, Compl. at ¶¶ 634-669). In order to sufficiently plead mail or wire fraud, the Complaint "must allege: (1) intentional participation in a scheme to defraud; and (2) the use of the interstate mails or wires in furtherance of that scheme." Cardenas, 418 F. Supp. 3d at 1099 (citing United States v. Maxwell, 579 F.3d at 1299 (citations omitted)). "The gravamen of the offense is the scheme to defraud, and any mailing ... incident to an essential part of the scheme satisfies the mailing elements, even if the mailing contains no false information." Gov't. Emples. Ins. Co. v. AFO Imaging, Inc., 2021 U.S. Dist. LEXIS 35278 *22-23 (M.D. Fla. Feb. 25, 2024).

In Cardenas, the plaintiffs alleged the defendants——Toyota, Toyota dealers, and the officers of these companies——along with the non-party HVAC designers and manafacturers were concealing defects in the HVAC systems in order to sell more cars. Id. at 1099. Toyota knew of the defects and communicated with the dealerships about these defects through the wires and mail. Id. at 1099-1100. Further, it was alleged Toyota

and the dealerships charged plaintiffs for remedies Toyota knew would not fix the defect in order to increase profits. Id. at 1100. And, despite knowing of the defect, Toyota did not disclose it to the public, but, instead, touted the quality and comfort of the cars. Id. at 1100-01. The district court in Cardenas found these allegations sufficient to meet Rule 9(b)'s heightened pleading standard of a "scheme to defraud based on 'material misrepresentations' or the 'omission or concealment' of material facts from the Plaintiffs and the putative class members." Id. at 1101.

Similarly, the Complaint alleges Defendants concealed the truth from Mr. Ball about Defendant's capabilities to perform legal services and actively misrepresented the legal remedies available to Mr. Ball. (D.E. 1, Compl. at ¶¶ 34-35, 37-38)(neither Donovan nor Christiane were licensed attorneys or ever went to law school); ¶ 40 (Amodeo is a disbarred bankruptcy attorney); ¶¶ 80-83 (Defendants told Ball they would win his appeal and free him from prison despite knowing he had waived his appellate rights)). Defendants told Ball they "would perform all legal services necessary to overturn [his] criminal conviction and sentence." (Id. at ¶ 93); see also ¶¶ 94-96 (alleging Defendants promised to do all legal work so that "all Ball would have to do is type and sign the filings.")).

In fact, the Complaint alleges these were fraudulent misrepresentations as Defendants knew either that said work was pointless or that they were never going to perform said work. ¶ 662 ("Defendants failed to provide Ball with legal services of even the lowest level of competence."); ¶¶ 666-668 (alleging Defendants were aware their statements to Mr. Ball that he had a winnable appeal were false when they made them.)).

The Complaint explains Defendants' misrepresentations continued when they convinced Mr. Ball that the Eleventh Circuit's recall of the mandate was a big win, opening the door to overturn his conviction, and was justification for extra payments. (Id. at ¶¶ 186-194). Defendants then falsely represented to Mr. Ball that granting Christiane Power of Attorney would help in his attack on his criminal case. (Id. at ¶ 206).

In Gov't. Emples. Ins. Co. v. AFO Imaging, Inc., the district court found the plaintiff adequately pleaded racketeering activity by alleging "fraudulent bills and correspondence mailings" submitted to an insurer for the "inherently unlawful goals—namely, the theft of money from GEICO and other insurers." 2021 U.S. Dist. LEXIS 35278 *23 (M.D. Fla. Feb. 25, 2021). The complaint in AFO Imaging included a chart of the fraudulent claims and allegations detailing "the location of the services, the claim number, the date of the accident, the date of the mailing, and the billed charges." Id. at *24.

Similar to the defendants in AFO Imaging, the Defendants used "The Law Office" to submit thousands of dollars of fraudulent charges to Mr. Ball under the guise of legitimate legal costs. (See D.E. 1, Compl. at ¶ 93 ("Donovan promised Ball that he, Christiane, and Amodeo would perform all legal services necessary to overturn Ball's criminal conviction in exchange for Ball paying Donovan, Christiane, and Amodeo."); ¶ 99, Exhibit "F" (wire transfer of $1,500.00 to Christiane); ¶ 107, Exhibit "I" (another payment by wire transfer to Christiane in the amount of $6,000.00); ¶¶ 140-146 (detailing $68,800.00 in wire transfers to Christiane)). The Complaint alleges that all money wired or otherwise sent to Christiane was shared by all Defendants as part of their shared enterprise, i.e., "The Law Office." (D.E. 1, Compl. at ¶¶ 603; 617; 625; 632; 643; 657; 658; 669; 678; 684-692; 747; 766; 781; 792).

The Complaint also explains how all the charges were fraudulent. First, Defendants were neither licensed nor capable of providing the legal services for which they were charging Mr. Ball. (Id. at ¶¶ 34-40 (none of the Defendants are licensed to practice law); ¶¶ 29-42 (Donovan and Amodeo are felons convicted of mail and wire fraud; Christiane has never been to law school nor is licensed)). Second, the legal services Defendants purported to provide were just not possible—no matter how capable an attorney was at advocating. (Id. at ¶ 92 (Defendants were charging Mr. Ball to overturn his conviction despite knowing Mr. Ball waived his appellate rights); ¶ 662 ("Defen-

dants failed to provide Ball with legal services of even the lowest level of competence."); ¶ 666-668 (alleging Defendants were aware their statements to Mr. Ball that he had a winnable appeal were false when they made them)). Third, Defendants charged for legal services and other things that they never provided. (See id. at ¶ 455 (alleging Defendants charged Mr. Ball for Adams State University but never enrolled him); ¶ 456 (alleging Defendants charged Mr. Ball for a private investigator but never hired one); ¶ 457 (alleging Defendants charged Mr. Ball for the services of Brian Horwitz, Esq., but never retained him); ¶ 327 (alleging Defendants "instruct[ed] Ball to write the Motion to Vacate himself"); ¶ 330 ("Ball attempted to write the Motion to Vacate using an outline left to him by Amodeo."); ¶ 345 (alleging Defendant informed Mr. Ball "he would need to write the Motion to Vacate Reply Brief"); ¶ 394 ("Neither Defendants nor Horwitz reviewed or edited Ball's draft interrogatories."); ¶ 364 (Defendants charged $10,000.00 for a free subscription to Dropbox); ¶¶ 429, 434-460 (detailing items for which Defendants grossly overcharged, double charged, or charged for services not rendered)). Fourth, the Complaint alleges the scheme to defraud was furthered by the use of interstate mail and wires. See id. at ¶ 659 ("All of the invoices sent by Christiane—on behalf of Defendants—were sent using the internet and email."); ¶ 660 ("All money Defendants induced Ball to send were sent to Christiane—on behalf of Defendants—via wire transfer.").

All of these misrepresentations by Defendants were designed for the purpose of inducing Mr. Ball into paying Defendants large sums of money. (Id. at ¶ 85 ("Donovan and Amodeo were particularly interested in—and spent an inordinate amount of time discussing—Ball's finances"); ¶ 92 ("In order to induce Ball into paying Ball for legal services...."); ¶ 640 (alleging false statements were made "to induce Ball into paying")). Mr. Ball's Complaint sufficiently alleges a pattern of racketeering activity.

2.  The Complaint Sufficiently Alleges Defendants Operated and Managed a RICO Enterprise. (/3)

Defendant's Motion attacks the enterprise element by arguing that the Complaint "failed to establish that there is an 'entity separate and distinct from any defendant.'" (D.E. 39, Motion at 6 (quoting Cisneros, 972 F.3d at 1215)).

"Under the federal RICO statute, an 'enterprise' is defined as 'any individual, partnership, corporation, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." AFO Imaging, 2021 U.S. Dist. LEXIS 35278 at *21 (ruling plaintiff adequately pleaded enterprise elemnts of RICO claim). "An association-in-fact enterprise is 'simply a continuing unit that functions with a common purpose.'" Cardenas, 418 F. Supp. 3d at 1101 (quoting Boyle v. United States, 556 U.S. 938 (2009))). "[W]hat is required, is 'evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'" Cardenas, 418 F. Supp. 3d at 1101 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

In AFO Imaging, the district court found the plaintiff pleaded the enterprise element of RICO sufficiently by alleging the defendants operated an entity and utilized said entity to "submit thousands of fraudulent charges on a continuous basis for over three years seeking payments that [the entity] was not eligible to receive...." AFO Imaging, 2021 U.S. Dist. LEXIS 35278 at *21. The district court also pointed to the plaintiff's allegations "that [the] enterprise engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collections on fraudulent billing...." Id.

In Cardenas, the district court ruled the plaintiff sufficiently alleged an association-in-fact enterprise between the Toyota defendants, Toyota dealers, non-party designers and manafacturers of car HVAC systems, and the officers of these entities. Cardenas, 418 F. Supp. 3d at 1101. The complaint alleged these parties communicated in regard to their common purpose of concealing the defects with the HVAC system in order

---

3/ "[B]ecause particularity pleading under Rule 9(b) is limited to the circumstances constituting fraud, the non-fraud elements of a RICO claim can be alleged under Rule 8(b) standards." Cardenas, 418 F. Supp. 3d at 1098.

to sell as many HVAC systems and vehicles as possible, thus, maximizing profit. Id. 1102.

Mr. Ball's Complaint sufficiently pleads an association-in-fact enterprise. (See generally D.E. 1, Compl.). The Complaint explains how Donovan, Chrisitane, and Amodeo all met and began working together to perform legal services. (D.E. 1, Compl. at ¶¶ 56-73). Specifically, "Amodeo's collaboration with Donovan and Christiane coalesced into creating a 'Law Office'...." (D.E. 1, Compl. at ¶ 62). The Complaint goes on to allege that "Amodeo demanded and received compensation from his fellow inmates in exchange for the legal services he performed." (Id. at ¶ 65), and this "compensation included ... money transfers from inmates' families." (Id. at ¶66), as well as "law books for ['The] Law Office'" (Id. at ¶ 113), and "access to WestLaw['s] online, subscription-based service." (Id. at ¶ 114).

The Complaint alleges that these fraudulent activities started prior to Mr. Ball's arrival at FCC Coleman Low in November 2018. (Id. at ¶¶ 74, 97), and lasted with respect to Mr. Ball until July 2023. (Id. at ¶ 410) and as a continuing enterprise until the present day. (Id. at ¶ 636). During this time, the Complaint alleges, Defendants were operating "The Law Office" for the purpose of charging inmates for improper and unauthorized legal services. (Id. at ¶ 55 (outlining improper motions filed in federal court by "The Law Office"); ¶¶ 65-66 (alleging Defendant's enterprise charged inmates for legal services)). More importantly, Defendants operated "The Law Office" continuously over these years for the common purpose of defrauding Mr. Ball out of hundreds of thousands of dollars. (Id. at ¶ 693 ("As a result of Defendants' pattern of racketeering activity, Ball suffered damages of at least $358,874.45.").

The Defendants started by telling Mr. Ball that he had grounds for a direct appeal and charged him $94,800.00 for their "work." (Id. at ¶ 196). The Defendants then focused their enterprise on convincing Mr. Ball he needed a Power of Attorney, and charged him $18,000.00. (Id. at ¶ 218). Next, "The Law Office" convinced Mr. Ball

-15-

to hire them for a Motion for Return of Property that ended up costing $54,000.00. (Id. at ¶ 245).

Defendants followed up by convincing Mr. Ball to pay them $13,000.00 for a Writ of Certiorari. (Id. at ¶ 255). As if that wasn't enough, "The Law Office" used its influence with Mr. Ball to convince him to enter into a personal services contract with Christiane. (Id. at ¶¶ 260-268), where Mr. Ball paid Christiane over $48,500.00 that was shared by all Defendants. (Id. at ¶ 283). Continually looking for more ways to bilk Mr. Ball, Defendants charged $15,000.00 for false enrollment in Adams State University, (Id. at ¶ 288), and $18,000.00 for a private investigator that was never hired. (Id. at ¶ 297).

All of these fraudulent schemes were advanced by the Defendants' continuing association-in-fact as "The Law Office," and its schemes had the common theme of promising Mr. Ball relief from his criminal conviction. (See id. at ¶ 91 (Defendants misrepresented to Mr. Ball he had a winning case); ¶ 110 (explaining Christiane was necessary for Mr. Ball to win his case); ¶ 111 (Chrisitane's services were a privilege); ¶ 114-115 ($10,000.00 for books and Westlaw subscription were necessary for Ball to win his case); ¶¶ 122-125 (hiring licensed attorney to which "The Law Office"'s work would be advantageous)).

After spending over a year defrauding Mr. Ball of over $100,000.00, Defendants were not about to close "The Law Office," so, they moved to the habeas stage. (Id. at ¶ 298)("After Ball lost his Direct Appeal, Defendants advised him that he should prepare to file a 28 U.S.C. § 2255 Motion to Vacate.")). First, the monthly fee paid to Christiane under the personal services contract increased from $5,000.00 to $6,250.00. (Id. at ¶ 309). Then, Defendants charged Mr. Ball $95,500.00 for the Motion to Vacate. (Id. at ¶ 351). The cherry on top was the $10,000.00 for a "Digital Record Archive" that was nothing more than a free Dropbox account. (Id. at ¶ 364).

Defendants' enterprise, as alleged in the Complaint, is very similar to the allegations in AFO Imaging, regarding the existence of a RICO enterprise. AFO Ima-

ging, 2021 U.S. Dist. LEXIS 35278 at *21. Defendants operated "The Law Office" to collect hundreds of thousands of dollars from Mr. Ball over a span of more than four years. (D.E. 1, Compl. at ¶ 657 ("Ball ... paid Christiane—on behalf of Defendants —$355,270.50 in 74 individual payments over the course of 53 months."). Defendants extracted this money from Mr. Ball through continuous fraudulent billing over those four years. See AFO Imaging, 2021 U.S. Dist. LEXIS 35278 *21 (ruling an enterprise was pleaded when allegations defendants engaged in unlawful acts by continually submitting and collecting on fraudulent billing).

The allegations in the Complaint regarding Defendants' enterprise also mirror the allegations that the Cardenas court found sufficient to establish a RICO enterprise. Cardenas, 418 F. Supp. 3d at 1101-02. As in Cardenas, Mr. Ball's Complaint alleges all the Defendants had a role in the fraud. (D.E. 1, Compl. at ¶ 76 (explaining Amodeo played the role of "a highly successful criminal attorney and advocate of incarcerated individuals"); ¶¶ 80-88 (alleging Donovan and Amodeo worked to gain Ball's trust in their legal abilities and Ball's confidences regarding his finances); ¶¶ 97-101 (explaining Christiane's role in collecting money from Ball)). All Defendants communicated to further the fraud. (Id. at ¶¶ 58-63 (explaining how Defendants met, associated, and formed "The Law Office")). And all Defendants shared in the benefits. (Id. at ¶ 73 ("Christiane shared the funds she received—from inamtes and inmates' families—with Donovan and Amodeo according to the agreed-upon distribution terms of their shared enterprise.")). The Complaint sufficiently pleads a RICO enterprise.

### 3. The Complaint Sufficiently Alleges Causation.

"Although a plaintiff need not show the injurous conduct was the sole cause of the injury asserted, proximate causation requires that the plaintiff allege 'some direct relation' between the injury asserted and the injurous conduct." Corcel Corp. v. Fergusopn Enters., 551  Fed. Appx. 571, 576 (11th Cir. 2014)(ruling district court

erred in dismissing RICO claim because causation was sufficiently pleaded). Defendants argue that Mr. Ball "cannot show Defendants' alleged conduct caused him injuries...." (D.E. 39, Motion at p.6). The Complaint belies this argument.

The Complaint draws a clear line between Defendant's pattern of racketeering activity and Mr. Ball's loss of hundreds of thousands of dollars. (D.E. 1, Compl. at ¶ 460 ("Ball found that Defendants charged him $55,000.00 in services not rendered."); ¶¶ 644-647, 650-655 (detailing payments made by Mr. Ball to Defendants as a result of their scheme to defraud)). As the Complaint clearly states, "Defendants' pattern of racketeering activity injured Ball by defrauding him out of the funds paid to Christiane—on behalf of all Defendants—and all other compensation given to Defendants." (Id. at ¶ 669; see also Id. at ¶ 693 ("As a result of Defendants' pattern of racketeering activity, Ball suffered damages of at least $358,874.45.).

The Complaint shows a direct relation between Defendants' injurious scheme to defraud and the hundreds of thousands of dollars lost by Mr. Ball. Causation is adequately pleaded.

III. Conclusion.

  The Complaint adequately pleads facts sufficient to establish diversity juris-
diction. And, if that is not enough, Mr. Ball's Affidavit silences any further chal-
lenge. The Complaint also pleads each element of civil RICO with adequate particula-
rity and specificity. Defendant Christiane Davis's Motion to Dismiss should be denied
in whole.

Respectfully prepared and submitted by William B. Ball on this 11th day of January, 2026:

William B. Ball, pro se
Reg. No. 70048-018
Federal Correctional Complex
Unit A-1 (Low Custody)
P.O. Box 1031
Coleman, FL 33521-1031

## CERTIFICATE OF SERVICE

This motion was presented to the prison mailing authorities on the same day as signed, and placed inside a postage-prepaid, properly addressed envelope. The original motion was delivered via United States First Class Mail to the United States District Court for the Middle District of Florida, Ocala Division, Office of the Clerk at 207 N.W. Second Street, Ocala, Florida, 34475.

Copies of this motion were sent via United States First Class Mail to Defendants at the following addresses:

Donovan G. Davis, Jr., #60439-018
3326 Verdi Circle, S.E.
Palm Bay, Florida
32909

Christiane Davis
3326 Verdi Circle, S.E.
Palm Bay, Florida
32909

Katherine Earle Yanes, Esq.
Counsel for Frank L. Amodeo
Kynes Markman & Felman PA
P.O. Box 2269
Tampa, Florida
33601-3369

William B. Ball

## VERIFICATION

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I hereby declare that the factual allegations and factual statements contained in this motion are true and correct to the best of my knowledge.

William B. Ball

-20-

Exhibit "1"


Affidavit of William B. Ball

In Support of Diversity Jurisdiction

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

William B. Ball,

    Plaintiff,

v.                            Case No.: 5:25-cv-00123-TPB-PRL

Donovan G. Davis, Jr.,
Christiane Davis,
Frank L. Amodeo,

    Defendants.

_____/

AFFIDAVIT OF WILLIAM B. BALL
IN SUPPORT OF DIVERSITY JURISDICTION

WILLIAM B. BALL deposes and states:

1.  My name is WILLIAM B. BALL. I am over 18 years of age. I am an inmate at
FCC Coleman Low in Coleman, Florida. I am fully competent to make this affidavit, and
I have personal knowledge of the facts stated in this affidavit. To my knowledge. all
of the facts stated in this affidavit are true and correct.

2.  Prior to being arrested, I was temporarily residing in Dubai for work for
seven (7) months. I had no intention of remaining in Dubai. I did not purchase any
property in Dubai or put down any roots whatsoever in Dubai.

3.  I was born and raised in Mississippi.

4.  Mississippi has always been my permanent home, and the place I intend to
return to whenever I have been away from Mississippi.

5.  Whenever I am asked for my address for official purposes, I have given my
Missisippi address. A true and correct copy of my arrest records are attached as
Exhibit "A."

6.  Since first obtaining a passport in 1997, my passport has continuously indi-
cated my address as being a Mississippi address. A true and correct copy of my pass-

-1-

port records have been attached at Exhibit "B."

7. Since obtaining my drivers license in high school, I have continuously held a Mississippi drivers license. A true and correct copy of my drivers license record has been attached at Exhibit "C."

8. Since first registering to vote in 2004, I have continuously been registered to vote in the State of Mississippi. A true and correct copy of my Mississippi voter registration records have been attached at Exhibit "D."

9. I have paid Mississippi state income taxes. A true and correct copy of the payments made to the State of Mississippi for state income taxes are attached as Exhibit "E."

10. Since the age of five, I have continuously banked with a Mississippi financial institution. A true and correct copy of my Mississippi-based financial records are attached at Exhibit "F."

11. I fully intend on returning to Mississippi——legally and in compliance with all terms of my conviction and supervised release——when I am released from prison.

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I hereby declare that the factual allegations and factual statements contained in this affidavit are true and correct to the best of my knowledge.

William B. Ball
Reg. No.: 70048-018

9 Jan 2026
Date

-2-

Exhibit "A"

Arrest Records

TAVE'S GARCIA

Arresting Officer (Print Name)     ABN     Agency

**Any affirmative answers will be referred to the Booking Screening Nurse for clearance prior to acceptance of any inmate.**

Reviewed by Medical/Mental Health: _____ Everett _____     _____ Everett 256198 _____

Printed Name        Signature

5141  Rev. (11-10-2014)



# HILLSBOROUGH COUNTY SHERIFF
## vMail Print for mailbox: Patrick-Young Dana N





HILLSBOROUGH COUNTY SHERIFF

**CELL BOOKING HARDCOPY**

**(BALL, WILLIAM BRINSON)**

BK# HS 2018-5497

## Cell Booking Information



### BALL, WILLIAM BRINSON

**Booking #** 2018-5497

**Type** MAXIMUM

**In Cell On** FEB-14-2018  1726

**Custody Level** RED (MAXIMUM TYPE)

**Classification** GENERAL POPULATION

**Status** CHARGES COMPLETE

**Trusty Eligibility** NOT TRUSTY ELIGIBLE

**Classified By** 2670 - ANTONGIORGI DEJESUS, ZENOBIA

#### ADDITIONAL INFORMATION

**Religious Preference** CHRISTIAN

**Veteran** NO

### LINKED EVENTS

| Type | Event |
|------|-------|
| Arrest | HS 2018-5180 |

## Related Person(s)

**1. ARRESTEE # 1 - BALL, WILLIAM BRINSON**

### PERSON PHOTO



**MUGSHOT  TAKEN ON 02/15/2018**

**CD# HS 813340**

**Sex** MALE
**Race** WHITE
**Date Of Birth** JUL-03-1978
**Address** 1405 CHURCH ST
**Municipality** COLUMBIA

---

**For 2979    Printed On Jan-14-2022 (Fri.)**                                                    Page 1 of 4



HILLSBOROUGH COUNTY SHERIFF
## CELL BOOKING HARDCOPY
### (BALL, WILLIAM BRINSON)

BK# HS 2018-5497

---

**State** MISSISSIPPI
**ZIP Code** 39429

## PERSON PARTICULARS

**Place Of Birth** MISSISSIPPI
**Occupation** TEACHER
**Employer** SWISS INTER, DUBAI
**Citizenship** AMERICA - UNITED STATES OF
**Marital Status** MARRIED
**Ethnicity** NOT HISPANIC OR LATINO
**Language(s) Spoken** ENGLISH
**Height** 5'09                          **Weight** 152 LBS.
**Build** THIN
**Eye Color** HAZEL

## MASTER NAME INDEX REFERENCE

**Name** BALL, WILLIAM  BRINSON
**Sex** MALE
**Race** WHITE
**Date Of Birth** JUL-03-1978
**Ethnicity** NOT HISPANIC OR LATINO
**Address** 1405 CHURCH ST
**Municipality** COLUMBIA
**State** MISSISSIPPI
**ZIP Code** 39429

## CASE SPECIFIC SCARS, MARKS AND TATTOOS

**Mark Type** TATTOOS                    **Location** BACK
**Description** CHINESE SYMBOL

## Medical Information

Exhibit "B"

Passport Records



**United States Department of State**

*Washington, D.C. 20520*

**FEB 1 6 2023**

In reply refer to: Case No. F-2021-03619, FL-2022-00001
CA/PPT/S/RM/RRR — BALL, William Brinson

William Brinson Ball, #70048-018
Federal Correctional Complex
Unit A-1 (Low Custody)
P.O. Box 1031
Coleman, FL 33521

Dear Mr. Ball:

We are responding to your letter requesting the release of information from your passport record.

We conducted a search of our records and were able to locate five documents that are relevant to your request. After careful review of the documents, we have determined that the documents may be released in part. Enclosed please find copies of the following:

> - Application for United States passport #              issued to William Brinson Ball on May 29, 1997, at the New Orleans Passport Agency. **[Released in Part Pursuant to the Freedom of Information Act, subsection (b)(6) and section (b) of the Privacy Act (5 U.S.C. § 552a). We have redacted material, the release of which would constitute a clearly unwarranted invasion of personal privacy of a third party, namely the passport acceptance or adjudication clerk.]**

-2-

-Application for United States passport #             issued to William Brinson Ball on January 25, 2007, by the United Stated Department of State. **[Released in Part Pursuant to the Freedom of Information Act, subsection (b)(6) and section (b) of the Privacy Act (5 U.S.C. § 552a). We have redacted material, the release of which would constitute a clearly unwarranted invasion of personal privacy of a third party, namely the passport acceptance or adjudication clerk.]**

- Application #712247299 for United States passport book #           issued to William Brinson Ball on August 7, 2007, by the United States Department of State. **[Released in Part Pursuant to the Freedom of Information Act, subsection (b)(6) and section (b) of the Privacy Act (5 U.S.C. § 552a). We have redacted material, the release of which would constitute a clearly unwarranted invasion of personal privacy of a third party, namely the passport acceptance or adjudication clerk.]**

- Application #703630620 for Amendment of United States passport book #           issued to William Brinson Ball on August 7, 2007, by the United States Department of State, amended on November 1, 2012, to add additional visa pages. **[Released in Part Pursuant to the Freedom of Information Act, subsection (b)(6) and section (b) of the Privacy Act (5 U.S.C. § 552a). We have redacted material, the release of which would constitute a clearly unwarranted invasion of personal privacy of a third party, namely the passport acceptance or adjudication clerk.]**

-3-

**-** Application #716314551 for United States passport book
#                    issued to William Brinson Ball on February 6, 2017, by the
United States Department of State.   **[Released in Part Pursuant to the
Freedom of Information Act, subsection (b)(6) and section (b) of the
Privacy Act (5 U.S.C. § 552a).  We have redacted material, the release
of which would constitute a clearly unwarranted invasion of personal
privacy of a third party, namely the passport acceptance or
adjudication clerk.]**

A certified copy of the passport records is available upon a written request
and submission of the $50.00 certification fee.  Payment in the form of a
U.S. bank check or money order made payable to the Department of State
should accompany your request.

This concludes the processing of your request.  If you have any questions,
your attorney may contact Douglas C. Dreier, Assistant U.S. Attorney at
(202) 252-2551 or Douglas.Dreier@usdoj.gov

Sincerely,

Team Lead
Office of Records Management
Records Review and Release Division
Passport Services

00070692-0071



Original Seen and Returned



FOIA(b)(6)

FOIA(b)(6)

BALL - 00361

# U.S. PASSPORT RENEWAL APPLICATION FOR ELIGIBLE INDIVIDUALS

OMB CONTROL NO. 1405-0020
OMB EXPIRATION DATE: 09-30-2019
ESTIMATED BURDEN: 40 MIN

**Attention: Read WARNING on page 1 of instructions**

**Please select the document(s) for which you are applying:**

[X] U.S. Passport Book    [ ] U.S. Passport Card    [ ] Both

The U.S. passport card is **not** valid for international air travel. For more information see page 1 of instructions.

[ ] Regular Book (Standard)    [X] Large Book (Non-Standard)

**Note:** The large book option is for those who frequently travel during the passport validity period, and is recommended for applicants who have previously required the addition of visa pages.

**716314551**

[ ] D    [ ] O    [ ] DP  DOTS Code

End. #

Exp.

**1. Name Last**

**BALL**

**First**

**WILLIAM**

Middle

**BRINSON**

**2. Date of Birth** (mm/dd/yyyy)    **3. Sex** M / F    **4. Place of Birth** (City & State if in the U.S., or City & Country as it is presently known)

**07  03  1978**    **X**    **HATTIESBURG, MS**

**5. Social Security Number**    **6. Email** (Info alerts offered at travel.state.gov)    **7. Primary Contact Phone Number**

**427  33  4218**    **MISTERBALLZED@GMAIL.COM**    **66001642**

**8. Mailing Address: Line 1:** Street/RFD#, P.O. Box, or URB

**PO BOX 34142**

**Address Line 2: Clearly label** Apartment, Company, Suite, Unit, Building, Floor, In Care Of or Attention if applicable. (e.g., In Care Of - Jane Doe, Apt # 100)

**EDUCATION CITY**

City

**DOHA**

State

Zip Code

Country, if outside the United States

**QATAR**

**9. List all other names you have used.** (Examples: Birth Name, Maiden, Previous Marriage, Legal Name Change. Attach additional pages if needed)

A.

B.

**10. Passport Book and/or Passport Card Information**
Your name as printed on your most recent U.S. passport book and/or passport card

**WILLIAM BRINSON BALL**

Most recent passport book number

**6412**

Issue date (mm/dd/yyyy)

**08/07/2007**

Most recent passport card number

Issue date (mm/dd/yyyy)

**11. Name Change Information** Complete if name is different than last U.S. passport book or passport card

[ ] Changed by Marriage    Place of Name Change (City/State)    Date (mm/dd/yyyy)

[ ] Changed by Court Order

Please submit a certified copy. (Photocopies are not accepted)

**CONTINUE TO PAGE 2**

**YOU MUST SIGN AND DATE THE APPLICATION IN THE DESIGNATED AREA BELOW**

I declare under penalty of perjury all of the following: 1) I am a citizen or non-citizen national of the United States and have not, since acquiring U.S. citizenship or nationality, performed any of the acts listed under "Acts or Conditions" on page four of the instructions of this application (unless explanatory statement is attached); 2) the statements made on the application are true and correct; 3) I have not knowingly and willfully made false statements or included false documents in support of this application; 4) the photograph submitted with this application is a genuine, current photograph of me; and 5) I have read and understood the warning on page one of the instructions to the application form.

X _____    **0 5 FEB 2017**

Applicant's Legal Signature    Date

**FOR ISSUING OFFICE ONLY**    [ ] PPT BK CIR    [✓] PPT BK S/R    [ ] PPT CD CIR    [ ] PPT CD S/R

[ ] Marriage Certificate    Date of Marriage/Place Issued:

[ ] Court Order    Date Filed/Court:

From:

To:

[ ] Other:    **Passport copy**

[✓] Attached:

For Issuing Office Only ⟶ Bk Fee  **90$**   Cd Fee ____  EF ____  Postage ____  Other **60$**

FOIA(b)(6)

**Consular Offices**

FOIA(b)(6)

**\* DS 82 B 08 2013 1 \***

DS-82 06-2016

Page 1 of 2

| Name of Applicant *(Last, First & Middle)* | | | | | Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|---|---|
| BALL, WILLIAM BRINSON | | | | | 07/03/1978 |

| 12. Height | 13. Hair Color | 14. Eye Color | 15. Occupation | | 16. Employer or School *(if applicable)* |
|---|---|---|---|---|---|
| 5ft. 10in. | BROWN | HAZEL | TEACHER | | |

**17. Additional Contact Phone Numbers**

4499 6944 ☑Home Cell Work   4454 2060 Home ☒Work Cell

**18. Permanent Address:** *If P.O. Box is listed under Mailing Address or if residence is different from Mailing Address.*

| Street/RFD # or URB *(No P.O. Box)* | | | | | Apartment/Unit |
|---|---|---|---|---|---|
| 1405 CHURCH STREET | | | | | |

| City | | | | State | Zip Code |
|---|---|---|---|---|---|
| COLUMBIA | | | | MS | 39429 |

**19. Emergency Contact** - *Provide the information of a person not traveling with you to be contacted in the event of an emergency.*

| Name | | Address: Street/RFD # or P.O. Box | | | Apartment/Unit |
|---|---|---|---|---|---|
| JOE BALL | | 1405 CHURCH STREET | | | |

| City | State | Zip Code | Phone Number | Relationship | |
|---|---|---|---|---|---|
| COLUMBIA | MS | 39429 | -4884 | BROTHER | |

**20. Travel Plans**

| Departure Date *(mm/dd/yyyy)* | Return Date *(mm/dd/yyyy)* | Countries to be visited |
|---|---|---|
| 02/23/2017 | 02/25/2017 | UNITED ARAB EMIRATES |

## STOP! YOU HAVE COMPLETED YOUR APPLICATION
## BE SURE TO SIGN AND DATE PAGE ONE

## WHERE DO I MAIL THIS APPLICATION?

**FOR ROUTINE SERVICE:**
National Passport Processing Center
Post Office Box 90155
Philadelphia, PA 19190-0155

**FOR EXPEDITED SERVICE (Additional Fee):**
National Passport Processing Center
Post Office Box 90955
Philadelphia, PA 19190-0955

Because of the sensitivity of the enclosed documents, Passport Services recommends using trackable mailing service when submitting your application

**NOTE REGARDING MAILING ADDRESSES:** Passport Services does not send mail to a private address outside the United States. If you do not live at the address listed in the "Mailing Address", then you must put the name of the person and mark it as "In Care Of." If your mailing address changes prior to receipt of your new passport, please contact the National Passport Information Center (NPIC) at 1-877-487-2778 or visit travel.state.gov.

**NOTE:** You may receive your newly issued document and your returned citizenship evidence in separate mailings. If you are applying for both a passport book and/or card, you may receive **three separate mailings:** one with your returned citizenship evidence; one with your newly issued passport book, and one with your newly printed passport card.

If you choose to provide your email address in Item #6 on this application, Passport Services may use that address to contact you in the event there is a problem with your application or if you need to provide additional information to us.



* DS 82 B 08 2013 2 *

Exhibit "C"


Mississippi Drivers License

# STATE OF MISSISSIPPI
## DEPARTMENT OF PUBLIC SAFETY

### CERTIFIED DRIVING RECORD

```
050005775243
```

Date: 11/25/2025

BALL, WILLIAM BRINSON
1405 CHURCH ST
COLUMBIA, MS 394290000

## DRIVER INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Name: | **WILLIAM BRINSON BALL** | DOB: | **07/03/1978** | SSN: | **XXX-XX-4218** |
| Street Address: | **1405 CHURCH ST** | Sex: | **Male** | Eye Color: | **Hazel** |
| City, State, Zip: | **COLUMBIA, MS 39429** | Height: | **5'10"** | Weight: | **135** |

DL Status: **Eligible**
CDL Status: **Eligible**

## ACTIVE CREDENTIAL INFORMATION - BASE CREDENTIAL

| | | | |
|---|---|---|---|
| Credential#: | 6367 | Issue Date: | **07/02/2015** |
| Active Credential Type: | **Regular Operator License** | Exp. Date: | **07/03/2023** |
| | | Endorsements: | **L:Motorcycles** |
| | | Restrictions: | |

## ACTIVE CREDENTIAL INFORMATION

| | |
|---|---|
| Credential#: | Issue Date: |
| Active Credential Type: | Exp. Date: |
| | Endorsements: |
| | Restrictions: |

## ACTIVE CREDENTIAL INFORMATION

| | |
|---|---|
| Credential#: | Issue Date: |
| Active Credential Type: | Exp. Date: |
| | Endorsements: |
| | Restrictions: |

## CDL MEDICAL INFORMATION

| | | |
|---|---|---|
| Certificate Issue Date: | | Medical Examiner: |
| Certificate Exp Date: | | Medical Examiner Type: |
| CDL Med Certificate Status: | **Not Applicable** | Medical Examiner License/Cer: |
| Federal Variance: | | Medical Examiner License/Cert. State: |
| Date Posted to CDLIS: | | Medical Examiner Phone: |
| Self-Cert CD: | | National Registry No: |
| Medical Restrictions: | | |
| Federal Var Issue Date: | | |
| Federal Var Exp Date: | | |

**For questions or information, contact Driver Records Division / MVR**
P.O. Box 1459, Canton, MS 39046
Phone: (601) 487-7028  www.dps.ms.gov

DRV003 ver 1.0                                                                 Page 1 of 2

**CITATION INFORMATION**

| Citation# | Violation Date | Conviction Date | Enforcement Agency | Violation Description | Severity |
|-----------|----------------|-----------------|--------------------|-----------------------|----------|

| There are a total of **0** Citations displayed for this driver |
|---|

**This report may be used as a clearance letter if the DL Status is "Licensed".**

STATE OF MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
AS DIRECTOR OF THE DRIVER SERVICE BUREAU, I DO HEREBY CERTIFY THAT
THIS IS A TRUE COPY OF DOCUMENTS OR RECORDS ON FILE

**For questions or information, contact Driver Records Division / MVR**
P.O. Box 1459, Canton, MS 39046
Phone: (601) 487-7028  www.dps.ms.gov

DRV003 ver 1.0

Page 2 of 2

Exhibit "D"

Mississippi Voter Registration

BALL – 00367

| County: Marion | Voter Profile Report | Date : 09/26/2024 |
|---|---|---|
| | | Report No: VR-005 |

**Voter ID : 1522848**

## Voter Information

| Voter ID | Last Name | First Name | Middle Name | Suffix | Date of Birth | Driver License |
|---|---|---|---|---|---|---|
| 1522848 | BALL | WILLIAM | BRINSON | | | 6367 |

| **Residence Address** | 1405 CHURCH ST COLUMBIA MS 39429 | **Precinct** | 101-National Guard |
|---|---|---|---|
| **Mailing Address** | P O BOX 1345 COLUMBIA MS 39429 | | |

## Registration Information

| **Status** | Inactive | **Reasons** | Confirmation Card Undeliverable | **Reg Source** | Over the Counter |
|---|---|---|---|---|---|
| **Last Voted Date** | | **Eff Regn Date** | 07/13/2004 | | |

## Miscellaneous Information

| **Secondary Language** | | **Gender** | Not Specified | **Assistance** | |
|---|---|---|---|---|---|

## Districts

| District Name | Position | Position Holder |
|---|---|---|
| United States | President | Joe Biden |
| United States | Senate | Roger F. Wicker |
| United States | Senate | Cindy Hyde-Smith |
| State Of Mississippi | Attorney General | Lynn Fitch |
| State Of Mississippi | Commissioner Of Agriculture & Commerce | Andy Gipson |
| State Of Mississippi | Commissioner Of Insurance | Mike Chaney |
| State Of Mississippi | Governor | Tate Reeves |
| State Of Mississippi | Lieutenant Governor | Delbert Hosemann |
| State Of Mississippi | Secretary Of State | Michael Watson |
| State Of Mississippi | State Auditor | Shad White |
| State Of Mississippi | State Treasurer | David McRae |
| US House Of Rep 03 | 3rd Congressional District | Michael Guest |
| Southern District | Supreme Court District 2(Southern) Position 1 | David M. Ishee |
| Southern District | Supreme Court District 2(Southern) Position 2 | Dawn H. Beam |

Exhibit "E"

State of Mississippi

Payment of Taxes

**Trustmark**

## ACCOUNT STATEMENT    PAGE 2

ACCOUNT NUMBER:    13473
JANUARY 01, 2000 TO JUNE 30, 2018

---

## ACCOUNT ACTIVITY SUMMARY

|  | CURRENT PERIOD | YEAR TO DATE |
|---|---|---|
| **MARKET VALUE AT BEGINNING OF PERIOD** | 0.00 | 0.00 |
| ADDITIONS TO ACCOUNT | 69,826.29 | 69,826.29 |
| PURCHASES | 1,875,310.28- | 1,875,310.28- |
| SALES AND MATURITIES | 2,124,372.68 | 2,124,372.68 |
| DIVIDENDS | 37,115.04 | 37,115.04 |
| OTHER INCOME | 20.49 | 20.49 |
| OTHER DISBURSEMENTS | 334,353.57- | 334,353.57- |
| FEES | 16,088.68- | 16,088.68- |
| MISCELLANEOUS | 5,581.97- | 5,581.97- |
| CHANGE IN MARKET VALUE | 610,132.33 | 610,132.33 |
| **MARKET VALUE AT END OF PERIOD** | **610,132.33** | **610,132.33** |

---

## INVESTMENT PORTFOLIO SUMMARY

| MARKET VALUE AS OF | 01/01/2000 | 06/30/2018 | % OF ACCOUNT |
|---|---|---|---|
| **CASH AND EQUIVALENTS** | 0.00 | 5,581.97 | 0.9% |
| **ETF - EQUITY** | 0.00 | 432,283.56 | 70.9% |
| **ETF - FIXED INCOME** | 0.00 | 74,421.10 | 12.2% |
| **ETF - INTERNATIONAL** | 0.00 | 97,845.70 | 16.0% |
| **Total** | 0.00 | 610,132.33 | 100.0% |

---

## STATEMENT OF INVESTMENT POSITION

| DESCRIPTION | TOTAL MARKET/ TOTAL COST | MARKET PRICE/ COST PRICE | EST ANNUAL INCOME/ GAIN / LOSS | CURRENT YIELD |
|---|---|---|---|---|
| **CASH AND EQUIVALENTS** | | | | |
| 38141W273 | | | | |
| GOLDMAN SACHS FINANCIAL SQUARE | 5,581.97 | 1.00 | 0.56 | 0.01 |
| FUND GOVERNMENT FUND 465 | 5,581.97 | 1.00 | | |
| CASH | 0.00 | | | |
| **\* TOTAL CASH AND EQUIVALENTS** | **5,581.97** | | **0.56** | **0.01** |
|  | 5,581.97 | | 0.00 | |

BALL - 00500

**Trustmark**

## ACCOUNT STATEMENT     PAGE 33

ACCOUNT NUMBER:      .3473
JANUARY 01, 2000 TO JUNE 30, 2018

## STATEMENT OF TRANSACTIONS ( CONTINUED )

| DATE | DESCRIPTION | PRINCIPAL CASH | INCOME CASH | COST | GAIN / LOSS |
|------|-------------|---------------|-------------|------|-------------|
| 04/14/17 | FEDERAL PERSONAL INCOME TAX TO UNITED STATES TREASURY 2016 FORM 1040-V SSN XXX-XX-4218 WILLIAM B BALL | 5,630.00- | | | |
| 04/14/17 | STATE PERSONAL INCOME TAX TO DEPARTMENT OF REVENUE 2016 FORM 80-106 INDIVIDUAL STATE TAXES FOR WILLIAM B BALL SSN XXX-XX-4218 | 1,600.00- | | | |
| 04/14/17 | FEE TO TRUSTMARK NATIONAL BANK | | 708.40- | | |
| 04/21/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 04/21/17 | 10,000.00- | | | |
| 05/08/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 05/08/17 | 2,500.00- | | | |
| 05/15/17 | FEE TO TRUSTMARK NATIONAL BANK | | 690.48- | | |
| 05/16/17 | BENEFICIARY EXPENSE COMPUTERSHARE 1/2 OF COST TO REDEEM THE LOST EDWARD LIFE SCIENCE SHARES FOR WILLIAM B BALL | 72.51- | | | |
| 06/14/17 | FEE TO TRUSTMARK NATIONAL BANK | | 692.44- | | |
| 06/19/17 | RECEIVED FROM WILLIAM B BALL TNB 4000030320 TRANSFER FROM TNB CHECKING ACCOUNT #****0320 PER REQUEST DATED 06/19/17 | 25,000.00 | | | |
| 07/03/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 07/03/17 | 3,000.00- | | | |
| 07/11/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 07/10/17 | 5,000.00- | | | |
| 07/17/17 | FEE TO TRUSTMARK NATIONAL BANK | | 719.08- | | |
| 07/27/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 07/25/17 | 2,650.00- | | | |
| 08/03/17 | DDA TRANSFER TRUSTMARK NATIONAL BANK CHECKING ACCT TRANSFER TO DDA #****0320 PER REQUEST FROM WILLIAM B BALL DATED 08/03/17 | 4,350.00- | | | |

BALL - 00531

Exhibit "F"


Letter from Trustmark National Bank

Verifying Ball as Customer

 **Trustmark**

December 15, 2025

William B. Ball, #70048-018
Federal Correctional Complex
Unit A-1 (Low Custody)
P.O. Box 1031
Coleman, FL 33521-1031

RE: Response Letter

Dear Mr. Ball,

Per your request on December 3, 2025, our records indicate that the William Brinson Ball IMA (Investment Management Account) held with Trustmark Wealth Management was opened in April 2016. Regarding Trustmark Bank Retail Banking, the only two accounts I am able to see were closed in 2009 & 2010.

Thank You,

Blake Rome
AVP & Private Wealth Client Executive




**UNITED STATES**
**POSTAL SERVICE** ®

# PRIORITY® MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD ON DOTTED LINE
**CERTIFIED MAIL** ®



9589 0710 5270 3790 0433 53

...pecified for domesti...
...ude $100 of insuran...
...ncluded for domest...
...rance.**

...y, a customs declar...

...items. For details regarding claims exclusions see the
....usps.com.
... http://pe.usps.com for availability and limitations of coverage.

**FROM:**
William B. Ball, #70048-018
Federal Correctional Complex
Unit A-1 (Low Custody)
P.O. Box 1031
Coleman, FL 33521-1031

**TO:**
United States District Court
Office of the Clerk
207 N.W. Second Street
Ocala, FL
34475

...ENVELOF
...HT

## SCREENED
## By USMS

kup,


USPS.COM/PICKUP

...NSURED

EP14F October 2023
OD: 12 1/2 x 9 1/2

how2recycle.info
**PAPER POUCH**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

       

UNITED STATES OF AMERICA FOREVER/USA   UNITED STATES OF AMERICA FOREVER/USA

# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY
# MAIL

## E ENVELOPE
GHT

kup,

## ■ INSURED



EP14F October 2023
OD: 12 1/2 x 9 1/2

# VISIT US AT USPS.COM®
## ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.