UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**WILLIAM B. BALL,**

**Plaintiff,**

**v.** **Case No. 5:25-cv-123-TPB-PRL**

**DONOVAN G. DAVIS, JR., CHRISTIANA DAVIS, and FRANK L. AMODEO,**

**Defendants.**
______________________________/

## MOTION OF GUARDIANS ON BEHALF OF DEFENDANT FRANK L. AMODEO TO DISMISS THE COMPLAINT

The court-appointed Guardians of Defendant Frank Amodeo move on behalf of Mr. Amodeo to dismiss the Complaint, Doc. 1, as to him. The Court should dismiss the Complaint as to Mr. Amodeo under Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6) because it is not adequately pled to provide notice, fails to state a claim, and is not pled with particularity. The Complaint makes numerous allegations against unspecified "Defendants" and is vague and conclusory. Further, although the Complaint does not acknowledge it, most of the conduct it alleges took place after Mr. Amodeo had been released from prison on CARES Act home confinement and no longer had any contact with the Plaintiff or the other defendants named in the Complaint, nor any involvement in their alleged activities. While Mr. Amodeo's June 2020 release is outside the four corners of the Complaint, this objectively-verifiable fact

establishes the untimeliness of the Complaint as to Mr. Amodeo, demonstrates the harm to him from Complaint's vagueness, and illustrates why the Court should dismiss the Complaint for failure to plead with particularity. For these reasons and the reasons set forth in the following Memorandum, the Court should dismiss the Complaint as to Mr. Amodeo.

## MEMORANDUM

## I. Background

### A. The parties

The Plaintiff, William B. Ball, is a federal prisoner incarcerated at FCI Coleman Low. Doc. 1 ¶ 5. Mr. Amodeo is a formerly incarcerated person who was previously also at Coleman. *Id.* ¶ 43. Although it is not alleged in the Complaint, Mr. Amodeo was released from Coleman in June 2020 on CARES Act home confinement.[1] In December 2024, Mr. Amodeo's sentence was commuted to time served by President Biden, and he is presently serving his term of supervised release. *Id.* ¶¶ 44, 45. The Complaint also names as Defendants Donovan G. Davis, Jr., who was a federal prisoner, and his wife, Christiana Davis. *Id.* ¶¶ 6, 7.

### B. The general allegations of the Complaint

The Complaint's general allegations assert that Mr. Amodeo, who is a former attorney, provided legal assistance to other prisoners in connection with their criminal

[1] Mr. Amodeo's release on home confinement is discussed in compassionate release filings in his criminal case. *See United States v. Amodeo*, Case No. 6:08-cr-176-Orl-28LRH, Doc. 362 at 1; Doc. 368 at 2.

cases and appeals; Mr. Davis assisted him in doing so, and Mrs. Davis assisted Mr. Davis, Mr. Amodeo, and other prisoners with legal matters; and that Mr. Amodeo, Mr. Davis, and Mrs. Davis received compensation in exchange for this assistance. Doc. 1 ¶¶ 36-40, 56, 67-73. The Complaint alleges Mr. Davis offered that Mr. Amodeo, Mr. Davis, and Mrs. Davis would assist Mr. Ball in attempting to overturn Mr. Ball's conviction and sentence in exchange for compensation. *Id.* ¶¶ 91-96.

The Complaint generally alleges a purported 2019 oral contract under which Mr. Davis made various promises of assistance to Mr. Ball in exchange for payments to Mrs. Davis. Doc. 1 ¶¶ 97-147. Regarding the purported oral contract, the Complaint's general allegations do not allege that: (1) Mr. Amodeo made any misrepresentations to Mr. Ball, (2) Mr. Amodeo was a party to the agreement, or (3) Mr. Ball paid any funds to Mr. Amodeo.

With regard to Mr. Ball's direct appeal, the Complaint alleges that Mr. Davis and Mr. Amodeo persuaded Mr. Ball to have them and not his retained counsel assist him in appealing his conviction and urged him to hire other counsel to prepare his reply brief and move for reconsideration of the Eleventh Circuit's decision to enforce his appeal waiver. Doc. 1 ¶¶ 148-69. This conduct is alleged to have taken place between November 2018 and early 2020. *Id.*

The Complaint then describes further conduct related to seeking reconsideration that Mr. Amodeo is not specifically alleged to have participated in

beginning after the Eleventh Circuit entered its opinion[2] in Mr. Ball's direct appeal in November 2020 (after Mr. Amodeo had been released). *Id.* ¶¶ 170-99.

Regarding the filing of a petition for a writ of certiorari, the Complaint generally alleges that unspecified "Defendants" requested funds to prepare a petition for Mr. Ball, claimed to have consulted with an outside attorney regarding the petition, and told Mr. Ball the outside attorney reviewed and edited the draft petition. Doc. 1 ¶¶ 249-58. It does not describe any conduct specifically attributed to Mr. Amodeo, and notably the publicly available Supreme Court docket reflects that Mr. Ball's petition was filed in September 2021, *Ball v. United States*, Case No. 21-5627 (S. Ct. Sept. 3, 2021), over a year after Mr. Amodeo left Coleman. The Complaint's general allegations describe payments to Mrs. Davis and Mr. Davis's involvement in facilitating those payments, *id.* ¶¶ 255-258; they allege no payments to Mr. Amodeo.

The Complaint generally alleges that after Mr. Ball lost his direct appeal, "Defendants" discussed with him filing a habeas motion and demanded and received payment to assist him in doing so. Doc. 1 ¶¶ 298-354. There are no allegations specific to Mr. Amodeo regarding the habeas motion, and, as noted, Mr. Amodeo was no longer at Coleman when Mr. Ball lost his direct appeal in November 2020.

The Complaint also generally alleges Mr. Ball was persuaded to execute a power of attorney in favor of Mrs. Davis and that payments were made to Ms. Davis; Doc. 1 ¶¶ 200-18; it includes no specific allegations that Mr. Amodeo was involved in

---

[2] *United States v. Ball*, 835 Fed. Appx. 493 (11th Cir. 2020)

the power of attorney or that he received any payments. Notably, much of the conduct related to the power of attorney the Complaint describes also took place after Mr. Amodeo was released from Coleman.

The Complaint's general allegations describe further activity Mr. Amodeo is not alleged to have been involved in, including a motion for return of property, Doc. 1 ¶¶ 221-48, a "Contract Agreement" between Mr. Ball and Mr. Davis and payments made under that agreement, *id.* ¶¶ 259-83, failure to enroll Mr. Ball in college classes or refund payments made to Mrs. Davis to do so, *id.* ¶¶ 284-88, failure to hire a private investigator or refund payments made to Mrs. Davis to do so, *id.* ¶¶ 289-97, and failure to maintain a digital archive, *id.* ¶¶ 355-64 Next, the Complaint sets out a series of events described as discovery of the fraud, none of which have anything to do with Mr. Amodeo. *Id.* ¶¶ 365-460.

In short, although the Complaint's "Background" is lengthy, little of it pertains to Mr. Amodeo, and it fails to specifically allege wrongdoing by him.

In February 2025, Mr. Ball filed his pro se Complaint, which asserts claims against Mr. Amodeo for Fraudulent Misrepresentation (Count III); Fraudulent Inducement (Count VI); Conspiracy to Commit Fraud (Count VII); Unauthorized Practice of Law (Count VIII), Mail & Wire Fraud (Count IX), Federal Civil RICO – Mail and Wire Fraud, 18 U.S.C. § 1961 (Count X); Federal Civil RICO – Fraudulent Use of Federal Court, 18 U.S.C. § 1961 (Count XI); Unjust Enrichment (Count XIV); and Breach of Contract (Count XVIII).

## II. The Court should dismiss the Complaint for failure to provide adequate notice of the claims against Mr. Amodeo.

The Complaint is a "shotgun" pleading that fails to provide the Defendants adequate notice of the claims against them. The court in *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), cataloged the various types of "shotgun" pleadings the Eleventh Circuit has identified, in terms that apply here.

*Weiland* stated that the "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. That is precisely what the Complaint here does. *See*, *e.g.*, Doc. 1 ¶¶ 510, 580, 600, 619, 628, 634, 670, 726, 776. This disorganized pleading results in the Complaint contradicting itself and making inconsistent allegations. *Compare*, *e.g.*, Doc. 1 ¶¶ 463-467 with *id.* ¶¶ 512-516.

The "next most common type" of shotgun pleading *Weiland* identified is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." 792 F.3d at 1322-23. The Complaint here includes 452 paragraphs of what it describes as "Facts," many of which are vague and conclusory; makes broad assertions about conduct by unspecified "Defendants," and sets forth overlapping, inconsistent allegations in the counts.

As stated in *Weiland*, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which

each claim rests." 792 F.3d at 1323. The Complaint here fails to meet the most basic pleading requirement, set forth in Federal Rule of Civil Procedure 8(a)(2), to make "a short and plain statement of the claim showing that the pleader is entitled to relief." It should therefore be dismissed.

## III. The Court should dismiss the Complaint against Mr. Amodeo for failure to state a claim and for failure to plead with particularity.

The Complaint should be dismissed against Mr. Amodeo because the counts naming him do not state plausible claims and are not pled with particularity. A complaint should be dismissed if it does not allege sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists when a complaint's factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the court accepts all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plausibility is not a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Further, Rule 9(b) requires that a party alleging a claim based on fraud "must state with particularity the circumstances constituting fraud." "[U]nder Rule 9(b), … Plaintiffs must allege (1) the precise statements, documents, or misrepresentations

made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam). That is, Rule 9(b) can be satisfied with allegations regarding "'facts as to time, place, and substance of the defendant's alleged fraud' and 'details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.'" *McTurk v. Lottery.com, Inc.*, 2025 WL 587060, at *3 (S.D. Fla. Feb. 24, 2025) (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 566–68 (11th Cir. 1994)).

Applying these standards here requires dismissal of the Complaint against Mr. Amodeo.

**A. Counts III and VI: Fraudulent Misrepresentation and Fraudulent Inducement**

Count III of the Complaint asserts a Fraudulent Misrepresentation claim against Mr. Amodeo and Count VI asserts a Fraudulent Inducement claim against him. While labelled differently, both counts set forth essentially the same allegations, and both fail to state a claim under Florida law for similar reasons.

Counts III and VI allege the following supposedly fraudulent statements:

- On February 13, 2019,[3] Mr. Amodeo falsely stated that: (1) Mr. Ball had viable grounds for his direct appeal even though his plea waiver precluded most appellate

[3]The listed dates also demonstrate the Complaint was filed following the expiration of Florida's four-year statute of limitations for fraud or contract claims. *See* Fla. Stat. § 95.11(3)(i).

grounds; (2) Mr. Ball could not prevail on appeal unless he hired the Defendants; and (3) the Defendants would provide legal services to overturn Mr. Ball's criminal conviction and sentence in exchange for payment; Doc. 1 ¶¶ 512-15, 582-85;

- On May 8, 2019, Mr. Amodeo falsely stated that he would retain a private investigator to investigate the agents who arrested Mr. Ball; Doc. 1 ¶ 516, 586.

These allegations fail to establish fraud. Under Florida law, the elements of a fraud claim include, among others, "a misrepresentation of a material fact by the defendant." *Capps Agency, Inc. v. MCI Telecommunications Corp.*, 863 F. Supp. 1555, 1558 (M.D. Fla. 1993), *aff'd sub nom. Capps Agency, Inc. v. MCI*, 24 F.3d 254 (11th Cir. 1994). "The elements of fraudulent inducement are the same as the elements for fraudulent misrepresentation, except that the plaintiff must also show that his or her reliance was justifiable." *Hardin v. Oakley Transp., Inc.*, 773 F. Supp. 3d 1320, 1334 (M.D. Fla. 2025). The "material fact" element is not met here as to the first two of Mr. Amodeo's alleged statements, regarding the viability of Mr. Ball's appeal and the wisdom of hiring the Defendants to assist with it, because these were not misrepresentations of fact. Instead, these statements are classic examples of the type of "puffery" or statements of opinion that are not actionable as fraud under Florida law because they are not statements of fact. *See, e.g. id.*; *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017); *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995). Mr. Ball cannot claim fraud merely because the opinions he asserts Mr. Amodeo expressed were not borne out.

The allegations that Mr. Amodeo promised the Defendants would perform the legal services necessary to overturn Mr. Ball's conviction and that he would retain a private investigator likewise fail to state a claim for fraud. Mr. Ball alleges Mr. Amodeo agreed to provide services in exchange for payment, then broke those promises; that is not a fraud claim, but a breach of contract claim. Fraud claims in Florida do "not extend to mere promises of future conduct" and must involve an alleged misrepresentation that is "independent of the promises contained in the contract itself." *McDowell v. Moore*, 2026 WL 1235917, at *7 (Fla. 4th DCA May 6, 2026). Accordingly, "[a] party cannot recast a breach of contract claim as a tort claim for fraud where the alleged misrepresentation relates to the same subject matter as the contract." *Id.; see also Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1223 (11th Cir. 2018) ("Misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, [where] such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.") (quoting *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1316 (11th Cir. 2007)). Thus, Mr. Ball cannot transform his allegation that Mr. Amodeo failed to keep promises to him into a fraud claim.

The Complaint's fraudulent misrepresentation and fraudulent inducement claims should therefore be dismissed.

**B. Count VII: Conspiracy to Commit Fraud**

Count VII of the Complaint asserts a claim for Conspiracy to Commit Fraud against all Defendants. This claim should also be dismissed, for at least two reasons.

First, the Complaint's failure to state a claim for fraud is fatal to the fraud conspiracy count. "Because civil conspiracy alone is not an independent tort," a plaintiff asserting a claim for conspiracy to commit fraud "must properly allege the elements of civil conspiracy *and* the elements of common law fraud in order to state an actionable claim…." *McTurk*, 2025 WL 587060, at *7. A complaint that "fails to adequately allege the existence of an underlying fraud" therefore fails to state a claim. *Id.* Here, the Complaint describes the object of the supposed fraud as convincing Mr. Ball to pay the Defendants to provide legal services they did not intend to provide. Doc. 1 ¶ 602. As discussed above, an unkept promise to provide future services cannot be converted from a breach of contract claim to a fraud claim by labelling the failure to perform a "fraud."

Second, the Complaint also fails to allege the elements of a conspiracy with specificity. Under Rule 9(b), "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff[] must plead this act with specificity." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067–68 (11th Cir. 2007). Vague, conclusory allegations that parties agreed to commit a fraud are insufficient to satisfy this standard. *McTurk*, 2025 WL 587060, at *8. The totality of the Complaint's allegations of an agreement among the Defendants is found in Paragraph 601, which asserts that the Defendants "conspired to defraud Ball" and Paragraph 602, which asserts that they "agreed" they would convince Mr. Ball to pay them for legal services they did not intend to provide. A complaint like this one that provides no details about an allegedly unlawful agreement beyond the bare allegation that there was such an

agreement "is clearly missing the 'when' and 'where' requirements as to the creation of the conspiracy." *Id*. at *12 (quoting *Am. United Life Ins.*, 480 F.3d at 1064.

For each of these reasons, Count VII of the Complaint should be dismissed.

### C. Count VIII: Unauthorized Practice of Law

Count VIII of the Complaint asserts a claim for Unauthorized Practice of Law against all of the Defendants. Article V, section 15 of the Florida Constitution grants the Florida Supreme Court exclusive jurisdiction to determine what constitutes the unlicensed practice of law. *The Florida Bar re Advisory Opinion-Scharrer v. Fundamental Admin. Services*, 176 So. 3d 1273, 1278 (Fla. 2015). Thus, a claim for unauthorized practice of law under Florida law must allege that the Florida Supreme Court "has ruled that the specified conduct at issue constitutes the unauthorized practice of law." *Scharrer*, 176 So. 3d at 1277; *see also Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907 (Fla. 2010).

Here, the Complaint asserts in conclusory fashion that the Florida *Bar* has ruled that the type of conduct it alleges the Defendants engaged in is the unauthorized practice of law. Doc. 1 ¶ 626. The Complaint provides no citation, support, or other authority for this statement, and it is the Florida *Supreme Court* that has exclusive jurisdiction to make such a determination. Count VIII therefore fails to state a claim and should also be dismissed.

### D. Count IX: Mail and Wire Fraud

Count IX of the Complaint asserts a claim for Mail and Wire Fraud against all Defendants on the theory that they used the United States Postal Services and the wires to commit a fraud. This count fails to state a claim because "[t]here is no private right of action under the" federal mail or wire fraud statutes. *Truthinadvertisingenforcers.com v. My Pillow, Inc.*, 2017 WL 382725, at *2 (M.D. Fla. Jan. 27, 2017); *see also Bell v. Health-Mor, Inc.*, 549 F.2d 342 (5th Cir. 1977).

Further, Count IX provides only a vague and conclusory description of the alleged fraud, stating that Defendants conspired to defraud him by agreeing to provide him legal and other services they knew they would not provide. Doc. 1 ¶ 629. This claim lacks the specificity required to satisfy Rule 9(b).

The Court should therefore dismiss Count IX.

### E. Count X: Federal Civil RICO for Mail and Wire Fraud

Count X of the Complaint asserts a Federal Civil RICO claim for Mail and Wire Fraud. A RICO claim must plausibly allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cont'l 332 Fund, LLC v. Albertelli*, 2021 WL 3184586, at *2 (11th Cir. July 28, 2021) (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994)). Further, where a RICO claim is based on mail and wire fraud predicates, its "allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with [Rule] 9(b)'s heightened pleading

standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). The Complaint fails to meet this standard.

First, the Complaint fails to plausibly allege the existence of an "enterprise." A RICO enterprise must have an existence separate and apart from the pattern of racketeering itself. *Boyle v. United States*, 556 U.S. 938, 949-50 (2009); *Cedric Kushner Promotions v. King*, 533 U.S. 158 (2001)). Thus, "a RICO enterprise 'cannot be a group simply conspiring to commit a fraud'; rather, the enterprise must exist 'separate from the alleged unlawful conspiracy.'" *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1267 (S.D. Fla. 2021). The Complaint makes only conclusory allegations regarding the existence of an enterprise, including no information that would establish the existence of an association in fact. The court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Where a complaint includes no allegations "beyond conclusory pleadings, of an enterprise that existed among the Defendants for a reason beyond the perpetration of a fraud on the Plaintiff," a RICO count fails to state a claim and should be dismissed. *Francois*, 565 F. Supp. at 1267.

Second, the Complaint fails to allege a pattern of racketeering activity. A pattern of racketeering activity requires at least two predicate acts, each of which provide sufficient facts to show it was "independently indictable as a crime." *Carter v. Florida Dep't of Children & Families*, 2025 WL 3906571, at *7 (M.D. Fla. Dec. 31, 2025) (quoting *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020)). Here, the Complaint re-asserts the allegations that in February and March 2019, the Defendants

told Mr. Ball he had a viable appeal, the Defendants would provide legal services to appeal his conviction, and they were qualified to do so. Doc. 1 ¶¶ 637-40, 666, 667. It also alleges that unspecified "Defendants" made false statements that the Complaint alleges elsewhere were made by Mr. Davis, or that are about events that took place after Mr. Amodeo was no longer at Coleman and had no involvement with Mr. Ball or the other Defendants, *id.* ¶¶ 645, 646, 648, 649, illustrating again the vagueness and lack of particularity of this Complaint and demonstrating why it must be dismissed for failure to satisfy Rule 9(b).

Further, these allegations are insufficient to plausibly allege a pattern of racketeering activity. Along with their vague and conclusory nature, they fail to allege a fraud for the same reasons discussed above in connection with the Complaint's fraud claims. That is, "[b]reach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud," making it "difficult to recast a dispute about broken promises into a claim of racketeering under RICO." *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999). And puffery or statements of opinion are not mail or wire fraud, and cannot serve as a predicate for a RICO claim. *See Am. Dental Ass'n*, 605 F.3d at 1292.

For these reasons, the Court should dismiss Count X.

### F. Count XI: Federal Civil RICO for Fraudulent Use of Federal Court

Count XI of the Complaint asserts a Federal Civil RICO claim for Fraudulent Use of Federal Court. The Complaint alleges in support of this claim that the Defendants used the federal court system to create a false impression they were

providing legitimate legal services, while they were actually filing frivolous briefs and engaging in the unauthorized practice of law. Doc. 1 ¶¶ 673-81.

Along with the same failure to adequately allege an enterprise as described above, this count fails to plausibly allege a pattern of racketeering activity because "fraudulent use of federal courts" does not constitute "racketeering activity." Section 1961(1) lists specified unlawful activity under particular statutes that may constitute "racketeering activity." "Fraudulent use of federal courts" is not among the listed activity or statutes. *See* § 1961(1). Further, the Eleventh Circuit has expressly held that neither threatened litigation nor the actual filing of allegedly frivolous litigation may constitute a RICO predicate. *See Town of Gulf Stream v. O'Boyle*, 654 Fed. Appx. 439, 444 (11th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004).

Accordingly, Count XI should also be dismissed.

**G. Count XIV: Unjust Enrichment**

Count XIV of the Complaint asserts a claim for Unjust Enrichment against Mr. Amodeo. The Complaint alleges that Mr. Ball conferred a benefit on Mr. Amodeo in the form of compensation for various services, and that Mr. Amodeo accepted those payments but Mr. Ball was not provided the promised services. Doc. 1 ¶¶ 727-39.

As an initial matter, the materials Mr. Ball attaches to the Complaint demonstrate that most of the benefits allegedly conferred on Mr. Amodeo are beyond

Florida's four-year statute of limitations for an unjust enrichment claim.[4] *John Hancock Life Ins. Co. v. Friedman*, 2021 WL 4973608, at *3 (S.D. Fla. May 28, 2021). While the statute of limitations is an affirmative defense, "dismissal on statute-of-limitations grounds is proper … where it is apparent from the face of the complaint that the claim is time-barred." *Butler v. Hartford Ins. Co. of the Midwest*, 2026 WL 1529395, at *2 (M.D. Fla. June 1, 2026) (quoting *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024)). Paragraph 727 of the Complaint, the paragraph that asserts Mr. Ball conferred a benefit on Mr. Amodeo, incorporates Exhibits CCCC and DDDD to the Complaint. Exhibit CCCC is described as receipts for various supplies Mr. Ball allegedly provided the Defendants. Doc. 1 ¶ 695. The Exhibit reflects that all of these alleged payments were made more than four years before Mr. Ball filed his Complaint on February 20, 2025. *See id* Ex. CCCC. Exhibit DDDD is described as printing fees Mr. Ball paid. *See id* ¶695. This Exhibit shows that all but approximately $125 in payments are time-barred. *See id* Ex. DDDD.

The Complaint also demonstrates that Mr. Ball would have known that any promises he alleges Mr. Amodeo made regarding his direct appeal had not been kept more than four years before the date he filed his complaint in February 2025. The Complaint alleges that it would be unfair to allow Mr. Amodeo to retain the benefit Mr. Ball allegedly conferred on him for promising to assist with Mr. Ball's appeal.

[4] Indeed, if the Complaint truthfully acknowledged that Mr. Amodeo left Coleman in June 2020 and had no involvement with Mr. Ball or the Defendants beyond that date, it would be apparent from the face of the Complaint that all of the claims against him are time-barred, including each benefit that is alleged to constitute unjust enrichment.

Doc. 1 ¶¶ 729, 741. According to the Complaint, however, Mr. Ball lost his direct appeal in November 2020. *Id.* ¶ 171. Mr. Ball had to have known before then what, if any, services Mr. Amodeo performed in connection with his direct appeal.

Further, while the Unjust Enrichment count alleges the payment of funds to Mr. Amodeo, Doc. 1 ¶ 727, the Complaint generally alleges, and numerous Exhibits to the Complaint demonstrate, that any payment of funds was made to Mrs. Davis, *see*, *e.g.* *id.* ¶¶ 99, 107, 133-36 & Ex. F, K-P. The Complaint makes no plausible allegations that these payments to Mrs. Davis were benefits conferred on Mr. Amodeo.

Finally, Mr. Ball asserts his Unjust Enrichment claim based on what he claims were express promises to him. Doc. 1 ¶¶ 729-39. This is an additional and independent reason the claim must be dismissed. An unjust enrichment claim is not available arising "out of a relationship governed by a contract between the two parties." *Alhassid v. Nationstar Mortgage LLC*, 771 Fed. Appx. 965, 969 (11th Cir. 2019). "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Id.* (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st. DCA. 2008).

Count XIV should therefore be dismissed.

### H. Count XVIII: Breach of Contract

Count XVIII of the Complaint asserts a Breach of Contract claim against Mr. Amodeo. This count of the Complaint alleges that on March 24, 2019, Mr. Ball and Mr. Amodeo entered into an "express oral contract" under which Mr. Amodeo would

provide legal services to Mr. Ball in connection with Mr. Ball's "Direct Appeal of his criminal conviction, Motion for Panel Rehearing, Motion to Recall the Mandate, Writ of Certiorari, Motion for Return of Property, and 28 U.S.C. § 2255 Motion to Vacate, Reply Brief, Motion for Discovery, and interrogatories." Doc. 1 ¶¶ 778, 779. This claim is barred by Florida's statute of frauds.

"Florida's statute of frauds requires contracts that cannot be performed within a year to be in writing." *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 Fed. Appx. 686, 690 (11th Cir. 2020) (citing Fla. Stat. § 725.01), *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 91–92 (Fla. 2013)). The scope of the alleged "express oral contract" here made it realistically impossible to fully perform the agreement within one year of March 2019. Further, the Complaint fails to allege any facts that plausibly show that the parties contemplated that the supposed agreement would be completed within one year of March 2019.

Accordingly, the Court should dismiss Count XVIII of the Complaint.

## CONCLUSION

The Complaint is a classic example of a shotgun pleading that fails to provide Mr. Amodeo adequate notice of the claims against him, fails to state claims, and is not pled with particularity. For these reasons, the Court should dismiss the Complaint against Mr. Amodeo and provide all other such relief as the Court deems appropriate.

Respectfully submitted,


_/s/ Katherine Earle Yanes_
Katherine Earle Yanes (FB# 159727)
KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750
Kyanes@kmf-law.com

*Attorneys for Defendant Frank Amodeo*


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 29, 2026, a true and correct copy of this Motion was filed with the Clerk of Court through the Electronic Filing System. I further certify that on June 29, 2026, I have mailed a copy of this motion to the following parties unable to receive CM/ECF notices:

William Ball, #70048-018
FCI Coleman Low
PO Box 1031
Coleman, FL 33521

Donovan Davis, Jr.
218 Davis Lane
Palm Bay, FL 32909

Christiane Davis
218 Davis Lane
Palm Bay, FL 32909
.

_/s/ Katherine Earle Yanes_
Katherine Earle Yanes